LEO FEIST, Inc., v. AMERICAN MUSIC ROLL CO.

(Circuit Court of Appeals, Third Circuit. April 24, 1918.)

No. 2345.

1. COPYRIGHTS ⟳48—LICENSE—MUSICAL COMPOSITION—MECHANICAL REPRODUCTION.

Under Copyright Act March 4, 1909, § 1 (Comp. St. 1916, § 9517), providing that, if the owner of a copyrighted musical composition uses or permits its use on a mechanical player, any other person may do so at a fixed royalty on notice to him, letters to an owner, which were answered, *held* not to create a personal license, but to be statutory notices.

⟳For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. COPYRIGHTS ☞90—MUSICAL COMPOSITION—SUIT FOR ROYALTIES—COUNSEL FEES AND DAMAGES.

In a suit by the owner of a musical copyright against one using the composition on a mechanical player to recover the royalties fixed by Act March 4, 1909, § 1 (Comp. St. 1916, § 9517), complainant may require the court to exercise its discretion as to allowance of counsel fees and treble damages.

Appeal from District Court of the United States for the Eastern District of Pennsylvania; J. Whitaker Thompson, Judge.

Suit in equity by Leo Feist, Incorporated, against the American Music Roll Company. From the decree, complainant appeals. Reversed.

Bernheimer & Sundheim, of Philadelphia, Pa. (Francis Gilbert, of New York City, and I. Lasker Greenberg, of Philadelphia, Pa., of counsel), for appellant.

Howard M. Long and Leighton P. Stradley, both of Philadelphia, Pa., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

McPHERSON, Circuit Judge. This bill—which was brought by Leo Feist, Incorporated, the owner of certain copyrighted songs that had been reproduced mechanically by the American Music Roll Company—prayed for an account, an injunction, the recovery of royalties, a counsel fee, and treble damages. Royalties were recovered, but the court refused to exercise its discretion on the subject of counsel fees and damages, holding that the plaintiff had voluntarily licensed the roll company and for that reason could in no event be advantaged by the punitive provisions of Act March 4, 1909, c. 320, 35 Stat. 1075. The appeal raises the single question, whether this refusal was erroneous, and whether the court should have exercised its discretion. Let us first consider the act, so far as it bears on the mechanical reproduction of music.

In February, 1909, the Supreme Court decided (White-Smith, etc., Co. v. Apollo Co., 209 U. S. 1, 28 Sup. Ct. 319, 52 L. Ed. 655, 14 Ann. Cas. 628) that perforated rolls for the piano were not "copies" within the meaning of the statutes then in force, and suggested that, if (as was true) this condition of the law permitted the mechanical reproduction of musical compositions without the payment of royalty, "such considerations properly address themselves to the legislative and not to the judicial branch of the government." Congress followed this suggestion, and in the revised act of 1909 provided for the protection of such compositions by giving to the owner the exclusive right (section 1, cl. "e" [Comp. St. 1916, § 9517]) "to make any arrangement or setting of (the composition), or of the melody of it, in any system of notation or any form of record in which the thought of an author may be recorded, and from which it may be read or reproduced." But—for reasons that are not before us, but probably included the desire to guard against the possible monopoly of mechan-

ical reproduction—the same clause went on to provide, "as a condition of extending the copyright control to such mechanical reproductions," that whenever the owner of a musical copyright should himself use, or should permit another to use, the copyrighted work upon instruments reproducing it mechanically, or should knowingly acquiesce in such use, any other person might make a similar use of the work upon paying the owner a royalty of 2 cents, and declared that such payment should free the article from further contribution to the copyright, except in the case of a public performance for profit. And in order that the public might know that a musical work had thus been thrown open to general use, the copyright owner, whenever he himself used or licensed another so to reproduce the work, was required to file notice of these facts in the office, the act declaring that the failure to file should be a defense to an action for infringement. As in many cases the owner was thus compelled to sell the right of mechanical reproduction, at a price fixed by the statute, to any one that desired to buy, without regard to his character or his business standing, the clause went on to give some protection to the owner by providing that he might require the compulsory licensee to furnish each month a sworn report of the number of parts produced during the month preceding, and declared that, if he should fail to pay the statutory royalty within 30 days after demand, the court might award the owner, not only costs, but a reasonable counsel fee and a penalty, not exceeding three times the royalty.

Having thus provided for notice to the public that any one was free to reproduce a particular work, the act in a later section (section 25, cl. "e" [Comp. St. 1916, § 9546]) prescribed a method for acquainting the owner with the names of the compulsory licensees, declaring that whenever any person "in the absence of a license agreement" intended to make a mechanical reproduction in reliance on the compulsory license provision of section 1, cl. "e," "he shall serve notice of such intention by registered mail upon the copyright proprietor at his last address disclosed by the records of the Copyright Office, sending to the Copyright Office a duplicate of such notice," and, in order to enforce compliance, the clause gives the court discretion, "in addition to sums hereinabove mentioned," to award the owner a further sum by way of damages, and to grant an injunction until the award is paid.

[1, 2] Turning now to the facts, about which there is almost no dispute, we find that between February 8, 1914, and September 1, 1916, the plaintiff copyrighted 35 songs, and shortly after the respective dates of copyright filed the notice required by section 1, cl. "e." Between August 25, 1914, and May 21, 1916, the defendant sent letters to the plaintiff, and received replies, concerning each of these songs; the true construction of this correspondence being the point of the controversy. The defendant's position—adopted by the District Court—is that any particular letter, with its reply, is a contract of license, and that the legal relation of the parties does not depend on the compulsory license feature of the act. The plaintiff contends that the roll company's letters were essentially notices under section

25, cl. "e," and that the plaintiff's replies were intended to show acquiescence in what could not be prevented. In our opinion, this contention is correct.

The defendant did not offer its own letters, or copies thereof, in evidence, so that we have only one side of the correspondence. This is not a satisfactory way to prove a contract that is averred to consist of a written request and a written reply, and it might be sufficient to say that, as the answer expressly set up "the special permission and license of the complainant * * * according to a written agreement therefor," and thus undertook to prove such an agreement, the defendant has failed to sustain the burden of proof. But, aside from this, we think the evidence shows that the dealing of the parties referred solely to the compulsory license provisions of the act. We see little sign of an attempt to make a formal agreement. The plaintiff had thrown the songs open to mechanical reproduction, and the roll company knew the situation. But, before reproduction could lawfully begin, the defendant was bound to give the plaintiff notice, and we may assume without impropriety that the missing letters were intended to obey the act. What words were employed we do not know, but we can hardly go wrong in believing that the ordinary terms of business politeness were used. This is indicated by the tone of the replies, in which "permission is granted," or "we are pleased to grant you permission," or "we hereby grant you the right," to use for roll purposes the following number, etc. But it is significant that (except two) all the plaintiff's replies in evidence couple the "permission" or the "right" with a reference to "the terms and conditions of the new copyright law," or some equivalent phrase. Moreover, only three of the letters say how much the royalty is to be, and none of the other letters mentions the word "rate," thus leaving the royalty uncertain. In addition, the two letters just referred to say nothing about "permission," or even about the act, but merely state that the plaintiff is sending copies, or the orchestration, of certain songs. Now, if the defendant's contracts are to be inferred from the plaintiff's replies, it is plain that for the four songs mentioned in these two letters no license can be pretended. But these two letters have their own value in throwing light on the true character of the correspondence: The roll company could not "cut" the songs without obtaining the necessary music, and for this it was applying to the plaintiff. The missing letters probably contained in substance a notice that the defendant was about to avail itself of the act, and asked for the music that was required, no doubt putting the request in courteous words, perhaps in the form of a request for "permission." The plaintiff could not refuse, and replied with equal courtesy and equal looseness; neither party supposing for a moment that they were making a contract outside of the act, and both parties paying little or no attention to the terms that would certainly have been considered, if they had understood that bargaining was in progress. For example, nothing is said concerning the length of time the license was to last, a matter that would not have been overlooked, if the parties had been making a voluntary contract. As we think, they

both knew that the act had already made the contract, and that nothing remained for them except to comply.

In another respect the defendant showed its understanding of the situation. No letter in evidence says a word about reports—another subject that would hardly have been omitted from a voluntary contract—but in accordance with the act the defendant did make reports from time to time; the last being furnished on March 7, 1916, covering the period ending December 31, 1915. During the subsequent correspondence, extending over several months before suit was brought the plaintiff was continually demanding a further report, not under a contract, but under the Copyright Act, and the defendant never suggested the existence of a contract, but continually acquiesced in the rightfulness of the plaintiff's demands.

We may add that the contracts set up by the defendant would have been superfluous, and are therefore unlikely to have been made. They refer to nothing that the act does not already provide for, namely, the right to use, and the royalty, and would hardly have been relied on now, if some loose language had not been used. Upon such language we are not disposed to lay much weight, especially in the present defective state of the evidence; if we had the defendant's proposals, we should be better able to judge whether a contract outside of the act was what the parties had in mind.

We need not prolong the discussion. In our opinion the controversy is governed by the compulsory license provisions of the act, and accordingly the decree is reversed, and the District Court is instructed to exercise its discretion concerning the allowance of a reasonable counsel fee and punitive damages under section 1, cl. "e," and (if either or both be allowed) to fix the amount thereof.