G. RICORDI & CO., Inc., v. COLUMBIA GRAPHOPHONE CO.

(Circuit Court of Appeals, Second Circuit. January 2, 1920.)

No. 78.

1. COPYRIGHTS ⬦48—NOTICE EFFECTIVE TO CREATE STATUTORY LICENSE, THOUGH GIVEN PENDING SUIT WITHOUT KNOWLEDGE OF COUNSEL.

A notice of intention to use a copyrighted song in making phonographic records, under section 1e of the Copyright Act (Comp. St. § 9517), was effective to create the compulsory license provided for by that section, though it was given pending a suit for infringement, without the advice or knowledge of defendant's counsel, especially where it was accepted and royalties paid.

2. APPEAL AND ERROR ⬦837(9)—FACTS MAY BE NOTICED ALIUNDE THE RECORD.

In a suit for infringement of a copyright, the Circuit Court of Appeals may notice aliunde the record the facts that pending the appeal the statutory notice has been given to create a compulsory license, and that it has been accepted and royalties paid.

3. COPYRIGHTS ⬦48—LICENSEE ESTOPPED TO DENY LICENSOR'S TITLE.

Where, pending appeal in a suit for infringement of a copyright, defendant gave the statutory notice to obtain a compulsory license, it was estopped from thereafter denying plaintiff's title.

⬦For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. COPYRIGHTS ⬤➞48—NOTICE OF INTENTION TO MAKE INSTRUMENTAL PHONO-
   GRAPHIC RECORDS CREATES LICENSE AS TO INFRINGING VOCAL RECORDS.

   Where plaintiff's copyright covered both the words and music of a
   song, and defendant without a license made a vocal reproduction on a
   phonographic record, and pending a suit for infringement gave the statu-
   tory notice that it intended to make and sell violin records, it became a
   licensee as to both records; there being no legal difference between the
   two records for purposes of infringement.

5. APPEAL AND ERROR ⬤➞781(2)—APPEAL IN COPYRIGHT INFRINGEMENT SUIT
   DISMISSED AS MOOT, WHERE DEFENDANT BECAME STATUTORY LICENSEE PEND-
   ING SUIT.

   Where, pending appeal in a suit for infringement of a copyright by mak-
   ing phonographic records of the copyrighted song, defendant gave the
   statutory notice to obtain a compulsory license, and the damages rendered
   did not exceed the statutory royalties, the questions involved in defend-
   ant's appeal are moot, and the appeal will be dismissed.

Appeal from the District Court of the United States for the South-
ern District of New York.

Suit by G. Ricordi & Co., Incorporated, against the Columbia Graph-
ophone Company. From a decree for plaintiff, defendant appeals.
Appeal dismissed.

See, also, 256 Fed. 699; 258 Fed. 72.

In this court plaintiff appellee moves to dismiss the appeal. Plaintiff ob-
tained copyright of the words and music of a certain song, which attained
considerable popularity and was and is apt for phonographic reproduction.
Defendant is engaged in the business (inter alia) of making and selling musical
records. For reasons not now material, defendant's manager thought, that
plaintiff's copyright was legally defective, and he thereupon served written
notice on plaintiff that his company did "not concede that the Copyright Act
* * * gives to you the right to control" mechanical reproductions of said
song, and therefore he gave "notice that we shall proceed to manufacture"
records thereof "without payment of royalty."

The Copyright Act of 1909 (35 Stat. 1075), as amended by that of August 24,
1912 (37 Stat. 488), gives to copyright owners, such as plaintiff, the right of
"controlling the parts of instruments serving to reproduce mechanically the
musical work" (section 1e [Comp. St. § 9517]), with the proviso, however, that
"whenever the owner of a musical copyright has * * *. permitted * * *
the use of the copyrighted work upon the parts of instruments serving to
reproduce mechanically the musical work, any other person may make simi-
lar use of the copyrighted work upon payment" of a royalty of two cents on each
record. The statute contains the further proviso that the copyright owner, if
he either uses his musical composition for the manufacture of records, or
licenses others to do so, shall file notice thereof * * * in the Copyright
Office" (section 1e).

In respect of the song here in question, plaintiff filed such a notice of use
several months before the above-described communication from defendant,
which was served January 31, 1919. The statute further declares (section 25e
[section 9546]) that, when a copyright owner has filed the notice of use as did
the plaintiff herein, he shall recover the statutory royalties provided by the
same act in section 1e and above referred to, and adds "whenever any person,
in the absence of a license agreement, intends" to make records of a copy-
righted musical composition, "relying upon the compulsory license provision
of this act, he shall serve notice of such intention, by registered mail, upon the
copyright proprietor * * * sending to the Copyright Office a duplicate"
thereof. If such compulsory licensee does not do this, the court "may in its
discretion" give further damages, not exceeding "three times the amount
provided by" the aforesaid section 1e.

Defendant made a record capable of reproducing the song as sung by the human voice and put it on the market. Plaintiff promptly brought this action. Defendant set up invalidity of copyright, and was defeated at the trial below. Final decree was entered June 23, 1919, and defendant then took this appeal.

On July 3, 1919, the same manager of defendant who in the preceding January had told plaintiff that its copyright was void gave written notice to the plaintiff that, "under the notice of use * * * filed by you with the Register of Copyrights, we hereby serve notice that we shall make and sell violin records" of the copyrighted song here in question. The violin record above referred to had been made without the knowledge of defendant's counsel in this suit, and the notice given by the manager on July 3d was likewise entirely unknown to counsel until after appeal had been taken.

W. Laird Goldsborough, of New York City, for appellant.

Nathan Burkan, of New York City, for appellee.

Before WARD, ROGERS, and HOUGH, Circuit Judges.

HOUGH, Circuit Judge (after stating the facts as above). While nothing in the statute prevents the owners of copyrighted musical works from granting licenses by private treaty, as in other cases, it is plainly said that protection from mechanical reproduction of music is only granted on condition of what the act itself calls "compulsory" license; that is to say, that if the owner is willing to license anybody he must license everybody at the statutory rate of royalty.

Infringers are those who copy without license, and it makes no difference whether the license is voluntary or compulsory, except as to the rate of payment; for we discover no prohibition upon (e. g.) an owner granting licenses at one cent a record. This relation between copyright holder and his customers has been substantially recognized in Feist v. American, etc., Co., 251 Fed. 245, 163 C. C. A. 401.

It is true that the statutory machinery for obtaining license prescribes the sending of notice by registered mail, and the filing of a duplicate thereof in the Copyright Office. It has not been urged that neglect of these procedural directions invalidates the notice, or renders ineffectual the effort to obtain a license. We therefore assume, without discussion, that what governs is the intent of the party serving the notice, which intent is, as usual, to be ascertained solely from the paper writing itself, if its words are clear.

[1] Appellant's counsel naturally insists that the sending of the notice of July 3d was a mistake; this is true, in the sense that it was done without counsel's advice or knowledge, and that it would not have happened, had he been consulted. But infringement, whether of copyright, patent, or trade-mark, is the act of the principal, not of the attorney, and so is contract making. The reason for the defendant taking what is now the usual step in respect of phonograph records of popular copyrighted music is plain, viz. to secure the lowest rate of royalty. When such a reason as this exists, a reason suggested by the law itself, the sending of such a notice cannot be regarded as inadvertent.

[2, 3] Furthermore, it has been accepted, and royalties paid under it by defendant to plaintiff, pending this appeal. Of these facts we are entitled to take notice "aliunde the record" (Keely v. Ophir, etc., Co.,

169 Fed. at page 605, 95 C..C. A. at page 103), and they appear conclusively to establish the fact that defendant has become plaintiff's licensee pending this action, and is therefore estopped from further denying its licensor's title. We have not overlooked the fact that defendant refused to execute plaintiff's (presumably) usual form of license agreement, when requested so to do after the service of the notice of July 3d, nor that, as soon as counsel learned what defendant had done, he treated the matter with the utmost fairness.

But it remains obvious that either that notice meant something or nothing. That it meant something when it was given is incapable of denial, viz.: It was an endeavor to keep down to the statutory minimum the royalties payable in the event of defeat in the then pending suit. But the only way that such royalties could be kept at that minimum was by availing of the compulsory license feature of the Copyright Law, and that is what defendant tried to do as to its violin record, while continuing litigation as to its earlier voice record.

[4, 5] There is no legal difference, at least where the copyright covered both words and music, between the two records, for purposes of infringement. A majority of this court is therefore compelled to hold that this question has become wholly moot. Whether there might not remain a question of damages, we need not consider, for the record before us discloses the fact that the minimum award of royalty damages was given by the court below, with the result that for all the infringements of the defendant, whether by one record or the other, defendant owes plaintiff two cents a record and no more.

The defendant having become plaintiff's licensee pending this appeal, the appeal is dismissed, without costs, and without expressing any opinion as to the questions of fact or law suggested by the record on appeal. But the lower court will be advised by the mandate of the circumstances leading to this disposition of the cause, and showing that an injunction is no longer either necessary or proper, and it will therefore vacate the injunction, while permitting the accounting to proceed.