REEVE MUSIC CO., Inc. and Robbins Music Corporation, Plaintiffs

v.

CREST RECORDS, INC., and Shelley Products, Ltd., Defendants.

Civ. A. No. 18887.

United States District Court
E. D. New York.

June 22, 1959.

Abeles & Bernstein, New York City, Julian T. Abeles, New York City, of counsel, for plaintiffs.

Jack Pearl, New York City, for defendants.

ABRUZZO, District Judge.

The plaintiffs, music publishers, instituted this action against the defendants under the provisions of the Copyright Act, 17 U.S.C. § 1 et seq., and 28 U.S.C. § 1338 relating to the compulsory licensing of phonograph records. Section 1(e), 17 U.S.C., provides:

"§ 1. *Exclusive rights as to copyrighted works*

"Any person entitled thereto, upon complying with the provisions of this title, shall have the exclusive right: * * *

"(e) * * * And as a condition of extending the copyright control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the

parts of instruments serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof; * .* * ".

Section 101(e), 17 U.S.C., provides:

"§ 101.  *Infringement*

"If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable: * * *

"(e) *Royalties for use of mechanical reproduction of musical works.* — * * * *Provided also,* That whenever any person, in the absence of a license agreement, intends to use a copyrighted musical composition upon the parts of instruments serving to reproduce mechanically the musical work, relying upon the compulsory license provision of this title, he shall serve notice of such intention, by registered mail, upon the copyright proprietor at his last address disclosed by the records of the copyright office, sending to the copyright office a duplicate of such notice; and in case of his failure so to do the court may, in its discretion, in addition to sums hereinabove mentioned, award the complainant a further sum, not to exceed three times the amount provided by section 1, subsection (e), of this title, by way of damages, and not as a penalty, and also a temporary injunction until the full award is paid."

Section 101(e) also provides that the plaintiffs shall be entitled to recover in lieu of profits and damages a royalty as provided in Section 1(e).

The plaintiffs move for summary judgment on the ground that there is no genuine issue as to any material fact concerning the liability of each defendant, and on the ground that each plaintiff is entitled to a judgment against each of the defendants on the issue of liability as a matter of law. The claims of both plaintiffs are based on substantially the same conduct on the part of the defendants.

The cause of action of the plaintiff, Reeve Music Co., Inc., hereinafter referred to as Reeve, alleges in substance that Antoine Domino and Dave Bartholomew created an original musical composition, "I'm In Love Again," which they assigned to Reeve, a music publisher, together with the right to secure the exclusive rights and privileges in and to the copyright of said musical composition both as a published and unpublished work; that Reeve received a certificate of registration from the Register of Copyrights; that Reeve licensed others to reproduce a composition mechanically upon their giving it notice and upon the payment of a recording fee as provided in conformity with statutory provisions; that subsequent to March 21, 1956, each of the defendants manufactured, used or sold, or were concerned in the manufacture of instruments serving to reproduce the copyrighted composition mechanically, without giving notice ω Reeve; and that the defendants have infringed Reeve's copyright.

The cause of action of the plaintiff, Robbins Music Corporation, hereinafter referred to as Robbins, contained similar allegations except that it is alleged that Harold Adamson and Jimmy McHugh are named as the creators of a musical composition, "Too Young To Go Steady," which was assigned to Robbins by the creators. The other allegations in the cause of action of Robbins relating to exclusive rights, assignment, copyright and infringement are similar to the allegations in the cause of action of Reeve.

Plaintiffs in their demand for relief request (1) that the defendants be enjoined from infringing the musical compositions; (2) payment of royalties; (3) delivery up to the Court of all mastrices, masters, acetates, stampers, molds, discs, tapes, and all other matter for making infringing parts; (4) payment of attorneys' fees.

In their answer the defendants deny any knowledge or information sufficient to form a belief as to the allegations in the complaint which set forth authorship, copyright and proprietorship of each composition and the filing of the compositions in the Copyright Office, and deny that they manufactured, used and sold, or contributed to or participated in the manufacture of instruments serving to reproduce mechanically the copyrighted musical compositions, and also deny failure to give notice, and infringement.

In the affidavits submitted in support of the plaintiffs' present application, the plaintiffs aver that the defendants have never applied to either plaintiff for a license agreement and have never served notice under the license provisions of 17 U.S.C. § 1(e). In their moving affidavits the plaintiffs refer to an examination before trial of the defendants by Clark F. Galehouse who is president of defendant, Shelley Products Ltd., hereinafter referred to as Shelley, and vice president of defendant Crest Records, Inc., hereinafter referred to as Crest. At the examination Galehouse admitted that Shelley had manufactured or pressed and shipped to Solitaire Recording Co., Ltd., hereinafter referred to as Solitaire, copies of a record from a master identified as "TH–02" and that Shelley had manufactured or pressed a record identified as "TH–02A" from a master made by Crest. Galehouse also admitted that no notice as required by statute was ever served by defendants on the plaintiffs. Plaintiffs contend that there are two musical compositions recorded on "TH–02," one being "I'm In Love Again" and the other "Too Young To Go Steady," and that on "TH–02A" one of the musical compositions is "Too Young To Go Steady."

In an affidavit submitted in opposition to this motion, defendant Shelley admitted that it "pressed" the records for Solitaire, a Canadian corporation, on a manufacturer supplied stamper sent to Shelley and then shipped the records to RCA Victor Ltd. in Ontario, Canada, at Solitaire's instructions; and the defendant Crest denied that it "bootlegged" plaintiffs' records and alleged that its only function was the master acetates shipped to RCA Victor Ltd. and the mastering and processing of two units shipped to Solitaire. It contends that although its invoice was used in billing Solitaire this was an error in that this was a Shelley charge and that payment was made by Solitaire to Shelley by a postdated check for $705 which was returned for insufficient funds.

Shelley contends that it is not a manufacturer within the meaning of 17 U.S.C. § 1(e) in that the service performed by it was merely one of a large number that made up the product; that the recordings were not its product; that it did not sell the recordings; and that it had no interest in the manufacture of the recordings other than the performance of the service of pressing a manufacturer supplied stamper into a blank acetate or stamping mold in compliance with the instructions of Solitaire and then returning the recordings to Solitaire. It also contends that it performed its function of pressing as a subcontractor and did not own nor was it concerned with the recording, turning out, or sale or distribution of the recordings in any way.

In contending that it is not a manufacturer, defendant Shelley relies on the findings of the Special Master in G. Ricordi & Co. v. Columbia Graphophone Co., D.C.S.D.N.Y., 270 F. 822, 824, confirmed at page 826. In this case which was a remand for an accounting from the Court of Appeals, Second Circuit, 263 F. 354, plaintiff, a copyright holder, sued defendant, an unauthorized manufacturer of phonograph records of the plaintiff's copyrighted musical composition, to recover royalties. The gist of the case was to determine what was meant by "manufacture." The defendant contended among other things that the records were not manufactured in the United States and, therefore, not protected by the United States Copyright laws. The Special Master found that there were nine distinct steps essentially involved in the manufacture of phonograph records, as follows:

"1. The song which is to be sold in the form of a phonograph disc record is first sung by an artist, the sound waves thus produced by the rendition of the song are collected by device and recorded on a revolving wax-like tablet known as a blank. This blank revolves on a turntable of approximately 80 revolutions per minute, and as the song is sung, the sound box attached to a very fine sapphire jewel known as a recording stylus, is let down in the surface of the wax tablet and cuts into the same and the vibrations of the sound are engraved on this tablet in the form of a volute spiral. The wax record thus made is called a wax master record.

"2. The wax master record is then prepared for electro plating by coating it with graphite, a metallic conducting surface.

"3. The wax master record coated with graphite is placed in an electro plating bath and covered with a coating of copper. The copper shell, reproducing the recording on the wax master, is then stripped from the wax master. This is known as a copper master record.

"4. The copper master record is then cleaned, silvered and waxed.

"5. The copper master record thus coated is placed in an electro bath and a shell of copper is deposited thereon. This shell of copper is then stripped and represents a record that is in all respects the same as the original wax engraving. This is called a mother record.

"6. The mother record is then silvered and prepared for an electro plating bath.

"7. The mother record, coated with silver, is placed in an electro plating bath and a copper shell deposited thereon which when stripped is known as the working matrix, or a stamping matrix.

"8. The copper stamper is then trimmed to size, a hole punched in the center, the surface prepared and then nickeled in order to prevent oxidation.

"9. The nickel stamper is then placed in a press, a thermo-plastic material, consisting of clay, shellac, lamp black and flock (ground cloth), is placed on a steam table, the copper stamper is sweated into a die, and that is also placed on the steam table. The plastic material is then brought together with the stamper under great pressure and flows into the lines of the record, after which it is chilled and separated."

Eight of these steps involving the preparation of the master in the process of "manufacture" were taken by the defendant in the United States, the ninth by the defendant at the factory in Toronto, Canada. The Special Master found that the records were to be deemed manufactured in the United States.

This definition of "manufacture" was approved in Edward B. Marks Music Corp. v. Foullon, D.C.S.D.N.Y., 79 F. Supp. 664, affirmed, 2 Cir., 171 F.2d 905. In that case the plaintiff sued United Masters, Inc., and Foullon, one of its officers. Plaintiff was a copyrighted holder of a musical composition and had issued a license to United Masters to use the musical composition. When United Masters defaulted in payment of royalties, plaintiff sued it and its officer, Foullon. Bard Recording Company was brought in as a party-defendant by the service of an amended complaint because it had pressed records from masters supplied by United Masters, Inc., and it was therefore, claimed that Bard was a manufacturer within the meaning of 17 U.S.C. § 1(e). The Court said (at page 667):

"As has been previously pointed out Bard was the last instrumentality in a chain of production. In short, United Masters, Inc. was the general manufacturer, and was so considered by the plaintiff. United Masters, Inc. hired the artists, recording studio, electroplating plant, and finally the pressing outfit.

"As early as 1926 owners of copyrights presented to the Congress comparable situations and have requested it not to limit the owners recourse to the general manufacturer where subcontracting manufacturers are involved and the general manufacturer is judgment-proof. The decision in G. Ricordi & Co. v. Columbia Graphophone Co., D.C., 270 F. 822 was brought to the attention of the Congress, which case held that the various steps taken to produce the stamper were all essential to the manufacturer and that the party who made all the arrangements was deemed to be the manufacturer. See Hearings H.R. 1043 (1926) pp. 284–285 before Patents Committee, Shafter Musical Copyright p. 244. However, the Congress took no action to rectify this alleged shortcoming in the statute; and the court may not legislate."

Although this case was affirmed, 2 Cir., 171 F.2d 905, the Court of Appeals made no determination as to which defendant was deemed the manufacturer.

A leading case on copyright infringement is Belford, Clarke & Co. v. Scribner, 144 U.S. 488, 12 S.Ct. 734, 36 L.Ed. 514. Although this case involves the printing of books and not the manufacturing of phonograph records, it holds (at page 507, 12 S.Ct. 734) that both the printer and publisher of the books are liable to the owner of a copyright for an infringement in that the printers were sharers in the profits realized from the sale of the books and were *participes criminis* with the publisher in the infringement.

The Court of Appeals for the Second Circuit has held on numerous occasions that the infringement of a copyright is a tort and all persons concerned therein are jointly and severally liable. See Gross v. Van Dyk Gravure Co., 230 F. 412; American Code Co. v. Bensinger, 282 F. 829; and Ted Browne Music Co. v. Fowler, 290 F. 751.

The Court of Appeals for the First Circuit in Sammons v. Colonial Press, 126 F.2d 341, citing Gross v. Van Dyk Gravure Co., supra, with approval, also holds that on familiar principles of tort liability all persons who unite in the infringement of a copyright are jointly and severally liable for the damages resulting therefrom.

None of these four cases last cited involved the mechanical recording of a song, but the legal principle expounded is applicable to the case at bar in that they all involve copyright infringements.

In Shapiro, Bernstein & Co. v. Goody, 2 Cir., 248 F.2d 260, a seller of unauthorized records which mechanically reproduced the plaintiffs' copyrighted songs was held to be an infringer under 17 U.S.C. § 101(e). It was held (at page 265):

"But this approach overlooks the fact that the manufacturer-defendants under § 1(e) (authorized manufacturers) can never be the same persons as the manufacturer-defendants (unauthorized manufacturers) under § 101(e). Since it is plain that the remedy of § 101(e) extends to unauthorized manufacturers who could not be sued under § 1(e), we think it equally apparent that the reference in § 101(e) to the 'royalty as provided in' § 1(e) was intended to limit not the class of potential defendants but only the amount of the royalty. This view is supported by the declaration in § 101(e) that 'the plaintiff shall be entitled to recover' rather than that 'the defendant shall be liable.' It is further supported by the fact that the phrase appears in the part of § 101(e) concerned with measure of recovery and not with liability."

In the case at bar, on the admissions by the defendants in their examinations before trial by their joint officer, Galehouse, that Shelley had manufactured or pressed and shipped to Solitaire copies of the record identified as "TH–02" and had manufactured and pressed the record identified as "TH–02A" from a master made by Crest and, on the admissions in the affidavit submitted in opposition to

this motion, that Shelley had pressed the records for Solitaire on a manufacturer supplied stamper and that Crest's function was the master acetates shipped to RCA Victor Ltd. in Canada, plus the mastering and processing of two units shipped to Solitaire, the defendants must be held to be joint tortfeasors with Solitaire and to be infringers of plaintiffs' copyrighted musical composition even though Shelley denies that it is a manufacturer.

The plaintiffs are entitled to recover against the defendants, not because the defendants may or may not be manufacturers as defined in G. Ricordi & Co. v. Columbia Graphophone Co., supra, but under that part of Section 101(e) of Title 17, U.S.C., which refers to the "remedy ef § 101(e)" which "extends to unauthorized manufacturers who could not be sued under § 1(e)." Shapiro, Bernstein & Co. v. Goody, supra.

Submit findings of fact and conclusions of law together with a decree in conformity with this opinion, and in the decree provide for a designation of a Master to determine the amount of royalties, if any, to the plaintiffs.