**FOREIGN & DOMESTIC MUSIC CORP. v. LICHT et al.**

No. 197, Docket 22266.

United States Court of Appeals
Second Circuit.

Argued March 6, 1952.

Decided May 2, 1952.

Henry Pearlman, New York City, for the appellant.

Samuel J. Siegel, New York City (John L. Grant, New York City, of counsel), for the appellees.

Before L. HAND, AUGUSTUS N. HAND and CHASE, Circuit Judges.

L. HAND, Circuit Judge.

The plaintiff appeals from a judgment, entered after a trial to a judge without a jury, sustaining the Tenth Defence of the defendant, Licht, and the Eight Defence of the defendant, Astra Pictures, Inc., and dismissing the complaint, in an action to recover damages for the infringement of the plaintiff's copyrights in four songs. The complaint was in three counts: the first laid a claim against the defendant, Licht; the second, a claim against Astra Pictures, Inc.; the third, a claim—not before us upon this appeal—against other defendants. The substance of the allegations in the count against Licht was as follows. Michael M. Wyngate, Inc., a corporation, and Weingarten, an individual, secured moving picture rights in a film, called "Ecstasy," on whose "sound track" the four songs had been recorded—"synchronized." The Wyngate Company and a corporation named Harbran, Inc., exhibited this film at the Gayety Theatre in New York between July 1st and October 31st, 1942; thereby infringing the plaintiff's copyrights in the songs. In an action, based on this infringement, the plaintiff recovered damages against the Wyngate Company of $9800 and against the Harbran Company of $3800, but it had failed to collect anything upon either judgment. The film was "distributed and exhibited by the said Michael M. Wyngate, Inc., by and through the medium of the defendant, Martin Licht, its president and director and sole stockholder, and by, and under his personal direction, management and execution." The count also contained allegations of a separate infringement of the copyrights in Hollywood, California before July 3, 1942, by Weingarten, in conjunction with the Wyngate Company, "through the medium of the defendant, Martin Licht, its president and director and sole stockholder and by and under his personal and individual direction, management and execution." The second count alleged that the Astra Pictures, Inc. took part in the exhibition of the film at the Gayety Theatre between July 3 and September 30, 1942, and elsewhere at unspecified places and times. The Tenth Defence of Licht and the Eighth Defence of the Astra Pictures, Inc. were in substance the same and as follows. The plaintiff was a member of the American Society of Composers, Authors and Publishers—ASCAP—to which on May 22, 1942, it had assigned the right to perform all its musical compositions, and had authorized it to act as the plaintiff's agent in licensing their performance. On June 1, 1942, ASCAP licensed Harbran, Inc. to perform the songs at the Gayety Theatre during the period alleged in the complaint. (These "Defences" alleged no defence to Weingarten's alleged performances in Hollywood before July 3, 1942, under the "direction, management and execution" of Licht; but since no mention of this has been made at the trial or in the briefs in this court, we assume that we are to disregard it, and that, if the "Defences" are good as to the Gayety Theatre, the complaint is to be dismissed against Licht, as well as against Astra Pictures, Inc.)

The plaintiff's agreement with ASCAP gave the "Society" authority to grant the license which it did grant to Harbran, Inc. and which covered the Wyngate Company, so far as it had any part in the performance at the Gayety Theatre. It declared that "the exclusive right of public performance in every such musical work shall be deemed assigned to the Society by this instrument and shall vest in and be the absolute property of the Society for the term hereof." The plaintiff argues that this authority was limited to "such songs" as "were lawfully

obtained by the producer or distributor from the copyright owner of the songs"; and in support of this it invokes the very terms of the agreement, which gave to the "Society" only the right of "public performance," not the right to reproduce the songs on a "sound track." Such a reproduction, it says, is one form of publishing and copying the songs which § 1(a) of the Copyright Act [1] makes the "exclusive right" of the owner. Subdivision (e) of § 1 confirms this by giving the owner the "exclusive right" to make any "arrangement or setting" of a melody in "any form of record in which the thought of an author may be recorded." The argument continues that these are two quite separate rights: *i. e.* exclusive "copying" and exclusive "performing"; and that a license to "perform" does not give the right to "copy"—including the right to "record" on a "sound track." Finally, it says, if a plagiarist secures a pirated copy, a license to "perform" it is invalid, because such a license presupposes a lawful acquisition of the composition performed.

We agree that to impose upon the "sound track" of a film those marks which will reproduce the words and music of a copyrighted song is to infringe the copyright; it falls exactly within § 1(e), and it must be remembered that copyright, as its name implies, means making a copy of the protected "work." The plaintiff appears to suppose that Eureka Productions, Inc., which produced the films and from which the Wyngate Company obtained them, had no title to the "sound tracks," and that the Wyngate Company could therefore get no right in them. That is not true. It is indeed true that while they were in the hands of Eureka Productions, Inc. they were subject to be impounded, and if the plaintiff recovered judgment against the infringer, they were subject to forfeiture and destruction.[2] However, they were subject to neither seizure nor destruction after the Wyngate Company obtained them;[3] for it is only when a plagiarized work is imported that it can be forfeited.[4] The remedy of forfeiture and destruction is given only against an *infringer*, and the Wyngate Company was not an infringer so far as concerned the making of the "sound tracks." True, it was a second act of infringement by Eureka Productions, Inc. to sell—"vend"—the "sound tracks", if it did sell them to the Wyngate Company; but, even so, it was not an infringement for the Wyngate Company to buy them; one does not infringe a copyright by buying an infringing copy of the "work," though the buyer will infringe, if in his turn he sells the copy he has bought, just as he does, if he "publicly performs" it for profit. In any event, the Wyngate Company was subject to no suit while it held the "sound tracks" of the song; whether or not the title had passed to it when it obtained the film. Indeed, while it held the film, it might even have performed it as it wished, provided that the performance was not "publicly for profit." It did indeed perform the songs "publicly for profit" in conjunction with Harbran, Inc., but the performance was under the license of ASCAP and, as the license was valid, the performance was not an infringement.

The findings of fact and conclusions of law in the action of the plaintiff against the Wyngate Company and Harbran, Inc. were not an estoppel here; and even if they had been, they would be irrelevant. The plaintiff does indeed demand judgment against Licht for the damages awarded against the Wyngate Company by the judgment in the other action, but the complaint alleged nothing which could support the claim. It did allege that Licht was an owner of 90% of the company's shares and later of all its shares, and that he was always a director and treasurer of the company and its president until 1944; but it is too obvious for discussion that these allegations do not make Licht liable for a judgment against the company. Indeed, the

---

1. § 1(a), Title 17 U.S.C.

2. § 101(c, d), Title 17 U.S.C.

3. Jewelers' Circular Publishing Co. v. Keystone Publishing Co., D.C., 274 F. 932, 936, affirmed, 2 Cir., 281 F. 83, 26 A.L.R. 571.

4. § 108, Title 17 U.S.C.

plaintiff does not now appear to press the point; at least its brief in this court contains no such suggestion.

Judgment affirmed: allowance of $750 to the defendants' attorney on this appeal.