**DUCHESS MUSIC CORPORATION**
et al., Plaintiffs,

v.

**Martin STERN et al., Defendants.**

**No. Civ. 71–190 Phx.**

United States District Court,
D. Arizona.

April 23, 1971.

Meadow, Cheche, Thrasher & Zalut, Phoenix, Ariz., for plaintiffs.

William C. Loftus, Phoenix, Ariz., for Pearl Rosner dba National Mfg. Co.

Robert G. Mooreman, Phoenix, Ariz., for W. L. Farringer, trustee in matter of E. S. H. Co., Inc., Bankrupt Case No. B–70–1648.

B. Allan Millstone, Hollywood, Cal., William B. Beirne, Daly City, Cal., Charles M. Duecy, Duecy, Moore, Petsch & Robinson, Scottsdale, Ariz., for Leland Bisbee Broadcasting Co.

Estrada & Estrada, Phoenix, Ariz., for Samuel C. Brocato.

Richard J. Herbert, Phoenix, Ariz., for Robert Lance dba Stereo Outhouse.

B. Michael Dann, Streich, Lang, Weeks, Cardon & French, Phoenix, Ariz., for Skaggs Drug Centers, Inc.

## MEMORANDUM AND ORDER

COPPLE, District Judge.

This action was initiated by a number of music publishing companies seeking to permanently enjoin the unauthorized manufacture and sale of tape recordings which serve to mechanically reproduce many of their copyrighted works. In attacking this practice referred to in the trade as "bootlegging", "disklegging" or "pirating", the publishing companies invoke jurisdiction under section 1 et seq. of the Copyright Act [hereinafter referred to as the Act], 17 U.S.C. § 1 et seq., and in addition to an injunction against further infringement ask damages for past infringement from both defendant manufacturers and retailers. Capitol Records, Inc. (Capitol) and RCA Records, a Division of National Broadcasting Company, Inc. (RCA), joining as plaintiffs in a first amended complaint, invoke diversity jurisdiction for their second and third claims in which they seek damages based on theories of unfair trade practice and unfair competition. In their first claims, Capitol and RCA also seek an injunction against further piracy, but other than alleging that they are *exclusive* licensees under certain of the copyrighted compositions, allege no basis for jurisdiction as to those claims.

The affidavit of Robert C. Osterberg filed in support of the application for an injunction and writ of seizure documents the publishers' attempts to discover the location of the defendants' highly mobile and clandestine "bootlegging" operation. Exhibits attached to Osterberg's affidavit reflect the professional quality of the package presented to the public and the organized promotion thereof. The affidavit of Albert Berman, managing director of the Harry Fox Agency, Inc., the exclusive representative of all the plaintiff copyright holders herein, describes the very real economic threat bootleg tape recordings pose to the music publishing and recording industries. The mechanical aspects of the reproduction are presumably similar to those described in Tape Industries Association of America v. Younger, 316 F.Supp. 340 (C.D.Cal.1970).

Presented with this impressive showing of an organized and flourishing yet highly mobile business operation, this Court, concurrent with the filing of the original complaint, issued a temporary restraining order *ex parte* and authorized the issuance of a writ of seizure directed at the defendant's manufacturing process. Subsequent to the issuance of the restraining order and writ of seizure defendant Rosner, pursuant to that procedure prescribed by the compulsory license provision of the Act, 17 U.S.C. § 101(e), and with respect to those works allegedly infringed, caused a "notice of intention to use" to be sent to the copyright proprietors and the copyright office. At a show cause hearing on April 6, 1971, argument respecting the seizure and the issuance of a preliminary injunction was heard. At that time the matter was taken under advisement.

Faced at the outset with what can only be termed anachronistic legislation, this Court is called upon to resolve certain ambiguities in the Act in deciding whether a preliminary injunction shall

issue, and if so, the terms thereof. An examination of the motions and objections filed thus far by defendants reveals the particular issues now before the Court.

Defendant Rosner has filed a motion for return of property, having reference to that property seized and impounded pursuant to the order of this Court of March 26, 1971. Sections 101(c) [1] and 101(d) [2] of the Act and the rules of practice promulgated thereunder, 17 U.S.C.A. at page 276 et seq., were cited as authority for the seizure of " * * * any and all parts of instruments [tape recordings] serving to reproduce mechanically plaintiffs' copyrighted musical works and all means for making the same, [including] labels, cartridges, tape recordings and machinery utilized in the manufacturing process * * *." *Order * * * To Issue Writ Of Seizure For Impounding Articles * * ** at page 5. Defendants' basic contention is that inasmuch as plaintiffs allege infringement of copyrighted musical compositions under conditions which Congress has specifically dealt with in sections 1(e) and 101(e) of the Act, the remedies provided by section 101(e) are exclusive.[3] That is, since section 101

---

1. Section 101(c) provides that an infringer shall be liable:

 —To deliver up on oath, to be impounded during the pendency of the action, upon such terms and conditions as the court may prescribe, all articles alleged to infringe a copyright;

2. Section 101(d) provides that an infringer shall be liable:

 —To deliver up on oath for destruction all the infringing copies or devices, as well as all plates, molds, matrices, or other means for making such infringing copies as the court may order.

3. Section 1(e) reads:

 To perform the copyrighted work publicly for profit if it be a musical composition; and for the purpose of public performance for profit, and for the purposes set forth in subsection (a) hereof, to make any arrangement or setting of it or of the melody of it in any system of notation or any form of record in which the thought of an author may be recorded and from which it may be read or reproduced: *Provided*, That the provisions of this title, so far as they secure copyright controlling the parts of instruments serving to reproduce mechanically the musical work, shall include only compositions published and copyrighted after July 1, 1909, and shall not include the works of a foreign author or composer unless the foreign state or nation of which such author or composer is a citizen or subject grants, either by treaty, convention, agreement, or law, to citizens of the United States similar rights. And as a condition of extending the copyright control to such mechanical reproductions, that whenever the owner of a musical copyright has used or permitted or knowingly acquiesced in the use of the copyrighted work upon the parts of instruments serving to reproduce mechanically the musical work, any other person may make similar use of the copyrighted work upon the payment to the copyright proprietor of a royalty of 2 cents on each such part manufactured, to be paid by the manufacturer thereof; and the copyright proprietor may require, and if so the manufacturer shall furnish, a report under oath on the 20th day of each month on the number of parts of instruments manufactured during the previous months serving to reproduce mechanically said musical work, and royalties shall be due on the parts manufactured during any month upon the 20th of the next succeeding month. The payment of the royalty provided for by this section shall free the articles or devices for which such royalty has been paid from further contribution to the copyright except in case of public performance for profit. It shall be the duty of the copyright owner, if he uses the musical composition himself for the manufacture of parts of instruments serving to reproduce mechanically the musical work, or licenses others to do so, to file notice thereof, accompanied by a recording fee, in the copyright office, and any failure to file such notice shall be a complete defense to any suit, action, or proceeding for any infringement of such copyright.

 In case of failure of such manufacturer to pay to the copyright proprietor within thirty days after demand in writing the full sum of royalties due at said rate at the date of such demand, the court may award taxable costs to the plaintiff and a reasonable counsel fee, and the court may, in its discretion, enter judgment therein for any sum in

(e) at most provides for an injunction and treble damages, impounding pursuant to section 101(c) is not proper.

Also with respect to the seizure and impounding, defendant Rosner alternatively argues that neither under the Act nor the rules promulgated thereunder is there authority to seize and impound the machinery and equipment listed on Exhibit B of her motion. The argument is basically that section 101(c) (all *articles alleged to infringe) and rules 3* and 4 promulgated thereunder (infringing copies, records, plates, molds, matrices or other means for making such infringing copies) only contemplate the seizure and impounding of items which are of " \* \* \* such a nature that they would be the last item of identifiable character used to make an infringing copy." *Memorandum In Support Of Motion For Return Of Property* at page 7.

Insofar as the issuance of a preliminary injunction is concerned, the manufacturing defendants contend that since they have now complied with the compulsory license provision of the Act, no further restraint may be imposed on their duplicating. Plaintiffs deny the availability of the compulsory license provision to duplication of the recordings of licensees of the copyright proprietors.

## THE SEIZURE

The early leading cases discussing the remedies of the Act are of little value in resolving the specific question of whether those remedies provided by section 101(e) are exclusive in cases of unauthorized mechanical reproduction of musical works. In Globe Newspaper Co. v. Walker, 210 U.S. 356, 28 S.Ct. 726, 52 L.Ed. 1096 (1908), a decision pre-dating the extensive 1909 amendments, the United States Supreme Court held that the Act provided damages for the infringement of a copyrighted map and " \* \* \* the remedies therein given are the only ones open to those seeking the benefit of the statutory right thereby created." 210 U.S. at 363, 28 S.Ct. at 728. More in point, in Universal Film Manufacturing Co. v. Copperman, 206 F. 69 (S.D.N.Y.1913), a writ of seizure was contested. Upholding the constitution-

---

addition over the amount found to be due as royalty in accordance with the terms of this title, not exceeding three times such amount.

The reproduction or rendition of a musical composition by or upon coin-operated machines shall not be deemed a public performance for profit unless a fee is charged for admission to the place where such reproduction or rendition occurs.

Section 101(e) reads:

*Royalties for use of mechanical reproduction of musical works.*—Whenever the owner of a musical copyright has used or permitted the use of the copyrighted work upon the parts of musical instruments serving to reproduce mechanically the musical work, then in case of infringement of such copyright by the unauthorized manufacture, use, or sale of interchangeable parts, such as disks, rolls, bands, or cylinders for use in mechanical music-producing machines adapted to reproduce the copyrighted music, no criminal action shall be brought, but in a civil action an

injunction may be granted upon such terms as the court may impose, and the plaintiff shall be entitled to recover in lieu of profits and damages a royalty as provided in section 1, subsection (e), of this title: *Provided also,* That whenever any person, in the absence of a license agreement, intends to use a copyrighted musical composition upon the parts of instruments serving to reproduce mechanically the musical work, relying upon the compulsory license provision of this title, he shall serve notice of such intention, by registered mail, upon the copyright proprietor at his last address disclosed by the records of the copyright office, sending to the copyright office a duplicate of such notice; and in case of his failure so to do the court may, in its discretion, in addition to sums hereinabove mentioned, award the complainant a further sum, not to exceed three times the amount provided by section 1, subsection (e), of this title, by way of damages, and not as a penalty, and also a temporary injunction until the full award is paid.

ality of the impounding, the court stated at 70:

> Congress evidently intended under section 25 [now section 101] to give a very summary remedy to the copyright owner in the first instance, and the Supreme Court by its rules thought it sufficient to protect the interests of the parties, respectively, by requiring bonds adequate in amount and with sufficient sureties, all questions on the merits to be subsequently determined in the usual way.

Neither *Globe* nor *Universal,* however, deal with infringement of musical compositions by mechanical means.

Similarly, in none of the cases cited by plaintiffs in support of their writ of seizure was there an alleged infringement of musical compositions where (1) the composer had given initial consent to record and (2) the infringement was by use of the copyrighted composition upon the parts of instruments serving to reproduce the work mechanically. *See* Foreign & Domestic Music Corp. v. Licht, 196 F.2d 627 (2d Cir. 1952); Universal Pictures Co. v. Schaeffer, 140 U.S.P.Q. 17 (E.D.Pa.1963); Dorchester Music Corp. v. National Broadcasting Co., 171 F.Supp. 580 (S.D.Cal.1959); Universal Film Manufacturing Co. v. Copperman, *supra.* That is, in none of those cases were the compulsory license and mechanical reproduction provisions of sections 1(e) and 101(e) invoked as a basis for the infringement action, as was done in the case at hand.

The case of Miller v. Goody, 125 F. Supp. 348 (S.D.N.Y.1954), presents the most extensive analysis on the question of whether sections 101(c) and 101(d) are applicable when sections 1(e) and 101(e) are invoked as the basis of the complaint. In that infringement action the district court on a motion for default judgment first determined at 351 that:

> The remedies possessed by a copyright proprietor in the event of an infringement by means of phonograph records *appear to be limited to the remedies provided in subsection (e) of this Section, i. e., that an injunction may be granted upon such terms as the Court may impose and that the plaintiff shall be entitled to recover * * * a royalty * * * which may be tripled * * *.*
>
> *The provisions of subsection (d) [destruction] * * * do not appear to be applicable to cases in which the violation of copyrights consists of the use of mechanical reproduction of musical works.* (Emphasis added).

The court in *Goody* nevertheless did impound the infringing articles, stating: "* * * I believe that it is within my power, as a matter of discretion, under subsection (e) of Section 101 of Tit. 17, to include in the injunction a provision that the [infringing articles] be impounded * * *" until the default decree is satisfied. 125 F.Supp. at 351.

Therefore, the impounding in *Goody* was affected through the court's express power to enjoin under section 101(e) and not under the authority of sections 101(c) and 101(d). In the case at hand the impounding was expressly based on sections 101(c) and (d) and not even alternatively on the court's equity jurisdiction under section 101(e). For the reasons to be discussed below, however, this Court does not find the *Goody* rationale compelling.

There is no doubt that in enacting what is now section 101(e), Congress was establishing a particular remedy for a particular problem:

> "Subsection (e) deals with the mechanical reproduction of music where such reproduction is unauthorized, and further provides that in the absence of a license agreement the person who intends to mechanically reproduce a copyrighted musical composition shall give notice of such intention to the copyright proprietor, and provides for damages in case of his failure to do so." H.R.Rep.No.2222, 60th Cong., 2nd Sess. 16 (1908–1909).

That is not to say, however, that the impounding and destruction provisions which are now sections 101(c) and (d)

were not to be applied in cases of infringement of copyrighted musical compositions by mechanical reproduction. In fact, the legislative history of the Act, meager as it is, would indicate otherwise:

> "Subsections (c) and (d) constitute new legislation, but it is believed that some legislation of the kind is necessary in dealing with *infringers*." H.R.Rep.No.2222, *supra* at 16 (emphasis added).

From the above, then, it is arguable that in enacting the predecessors of sections 101(c) and (d) Congress was attempting to deal with infringers *in general*.

■ Viewing section 101 on its face, this Court is led to the same conclusion. The various subsections are listed conjunctively. The section's introductory paragraph negates the notion of exclusivity.[4] Furthermore, subsection (e) is specifically captioned *"Royalties* for use of mechanical reproduction of musical works" (emphasis added) and, by force of this express categorization, any exclusivity of subsection (e) is related solely to the measure of damages in cases of unauthorized mechanical reproduction of musical works. *See* Shapiro, Bernstein & Co. v. Goody, 248 F.2d 260 (2d Cir. 1957).

An examination of the rules adopted by the Supreme Court to implement and govern the remedies provided by section 101 leaves a similar distinct impression that *all* infringers could be subject to those subsections authorizing impounding and destruction.

Most significant to this Court, however, is the illogic of the proposition that Congress would sanction seizure and impounding in all cases of infringement except those involving mechanical reproduction of copyrighted musical compositions. Congress may have been dealing with a special case in providing compulsory licensing and treble damages in section 101(e), but there is no indication in the Act's legislative history or otherwise that infringement of the sort practiced by defendants be afforded preferential treatment by immunizing such defendants from having infringing articles in their possession seized, impounded and ultimately destroyed.

■ Interpreting the Act as to authorize a seizure and impounding where the action is based on sections 1(e) and 101(e) does not eliminate the question of what exactly may be seized. As noted above, this Court directed the Clerk to issue a broad writ of seizure. Not only were those tapes containing unauthorized reproductions of plaintiffs' copyrighted works seized, but also " * * * all means for making the same, comprehending labels, cartridges, tape recordings and machinery utilized in the manufacturing process."

Although the court in Miller v. Goody, *supra,* impounded pursuant to its equitable power to enjoin under section 101 (e), it loosely used some of the terminology of section 101(c) and the rules of practice when it listed the articles to be impounded:

> "[M]atrices, plates, molds, stamps, discs, tapes, and other matter upon which the copyrighted musical compositions may be recorded or transcribed, or from which the parts serving to reproduce mechanically said copyrighted musical compositions may be made * * *." 125 F.Supp. at 351.

In a later companion case, Miller v. Goody, 139 F.Supp. 176 (S.D.N.Y.1956), rev'd on other grounds sub nom. Shapiro, Bernstein & Co. v. Goody, 248 F.2d 260 (2d Cir. 1957), the court at 179 described what was actually taken:

> Krug was ordered to turn over to the Special Master all the materials with which he had made the infringing records * * *.

---

4. The introductory paragraph reads:
 If any person shall infringe the copyright in any work protected under the copyright laws of the United States such person shall be liable:

And after a stipulation of settlement:

> Krug turned over to the plaintiffs all the materials with which he had manufactured, labeled and jacketed the recordings * * *.

Inasmuch as the court in *Goody* impounded pursuant to section 101(e), an avenue this Court has not deemed necessary to take, it is not necessary to comment on the scope of that court's order. Nevertheless, it can be noted that even under the *Goody* court's liberally worded order there is no indication that the defendant's recording equipment or machinery was, or could have been, seized and impounded.

Section 101(c) merely provides that, during the pendency of the infringement action, the court may impound " * * all *articles* alleged to infringe." (Emphasis added) Section 101(d) envisions a more drastic remedy—eventual destruction—and more comprehensively catalogues the items which may be impounded:

> [A]ll the infringing copies or devices, as well as all plates, molds, matrices, or other means for making such infringing copies * * *.

The rules of practice implementing sections 101(c) and (d), with one exception, use terminology similar to that of section 101(d).[5]

■ While recognizing that this ambiguous language admits of several interpretations, this Court can only conclude that the most reasonable one precludes the seizure and impounding of defendants' tape recording machinery and equipment. Application of the rule of *ejusdem generis* requires that the phrase "or other means of making such infringing copies" be held to apply only to the same general class as are those items specifically enumerated in the

phrase immediately preceding, and each of the preceding enumerated items— plates, molds, matrices—is of such a particular character as to embody, as defendant suggests, an identifiable impression of the copyrighted work.

Furthermore, if eventual destruction is one of the purposes of impounding, *see* Jewelers' Circular Publishing Co. v. Keystone Publishing Co., 274 F. 932 (S.D. N.Y.1921), this Court can conceive of no rationale within the wording of the Act which would justify destruction of any property usable for other, non-infringing purposes.

■ In view of the construction rendered above, defendants are entitled to the return of their tape recording equipment and machinery, as well as to all blank tapes, cartridges, cassettes, labels or any unmarked or unprinted packaging materials. On the other hand, all property which either embodies a mechanical and/or electronic impression of plaintiff publishers' copyrighted works or any packaging or promotional devices identifying or referring to same are still subject to impoundment.

## THE INJUNCTION

Before this Court can pass on the merits of the application for a preliminary injunction and the possible terms thereof, it is necessary to consider certain issues relating to the compulsory license feature of the Act. As noted, defendant Rosner, after initiation of .the action, filed a "notice of intention to use" thereby declaring her intention to continue the manufacture of tapes by the same reproducing methods used in the past. Plaintiffs, however, would first contend that the compulsory license provision is not available to a duplicator of the recordings of the licensees of the copyright proprietors.

---

5. That exception is rule 9, which at 17 U.S.C.A., page 280, reads:

> The defendant, if he does not except to the amount of the penalty of the bond or the sufficiency of the sureties of the plaintiff or complainant, may make application to the court for the return to him of the articles seized,

> upon filing an affidavit stating all material facts and circumstances tending to show that the articles seized are not infringing copies, records, plates, molds, matrices, *or means for making the copies alleged to infringe the copyright*. (Emphasis added)

In Aeolian Co. v. Royal Music Roll Co., 196 F. 926 (W.D.N.Y.1912), a piano roll manufacturer having a license to use certain copyrighted musical compositions on its perforated rolls sought an injunction under the Act against a competitor who was copying and duplicating its rolls. The court, in discussing the compulsory license provision, noted at 927:

> The provision of the statute (section 1e) that "any other person may make similar use of the copyrighted work" becomes automatically operative by the grant of the license; *but the subsequent user does not thereby secure the right to copy the perforated rolls or records. He cannot avail himself of the skill and labor of the original manufacturer of the perforated roll or record by copying or duplicating the same, but must resort to the copyrighted composition or sheet music, and not pirate the work of a competitor who has made an original perforated roll.* (Emphasis added)

Accordingly, in attempting to afford the licensee a remedy against piracy of this kind, the court concluded that not only the copyright owner but also its licensee, alone, could invoke the general injunction provision of the Act against such practice.

■ Although *Aeolian* has never been expressly overruled, it has been meagerly cited and severely criticized. First of all, sections 1(e) and 101(e) dictate that there be no exclusive licensee of the rights of mechanical reproduction. The *Aeolian* decision which would nevertheless allow a licensee to seek an injunction on such grounds is fundamentally incompatible with the above-mentioned compulsory license principle. Furthermore, "[i]f the [*Aeolian*] court's reasoning is right, the practical effect would be to give the licensee a copyright in his record," Note, *Piracy on Records*, 5 Stan.L.Rev. 433, 445 (1953), something Congress has not seen fit to do. *E. g.,* Capitol Records, Inc. v. Mercury Records Corp., 221 F.2d 657 (2d Cir. 1955).

■ Nevertheless, plaintiffs would argue that *Aeolian's* rationale condemning the practice of a subsequent manufacturer appropriating the labor and skills of a competitor by duplicating the latter's product is significantly similar to and compatible with certain common law rules of unfair competition which would prohibit such duplicating or pirating. By this approach they would have the Court infer that the manufacturing defendants are not entitled to avail themselves of the compulsory license feature of the Act. But this point only serves to illustrate another woeful inadequacy of the present copyright legislation. Copyright plaintiffs seek injunctive relief exclusively under the Act and not under any theory of unfair competition or unfair trade practice and, under the Act, Congress has not differentiated between a subsequent manufacturer who imitates another manufacturer's product and one who merely duplicates or appropriates the product with little or no investment of skill, talent or money.

In Miller v. Goody, 139 F.Supp. 176 (S.D.N.Y.1956), rev'd on other grounds sub nom. Shapiro, Bernstein & Co. v. Goody, 248 F.2d 260 (2d Cir. 1957), the court at 177 expressly recognized the bootlegger's or pirate's right to avail himself of the compulsory license provision of the Act:

> Krug was entitled to manufacture recordings of these selections provided he filed notice of his intention to do so, and provided he paid the copyright proprietors a royalty of 2 cents for each record manufactured.

One commentator, in scrutinizing the implications of the above-quoted passage, has succinctly described the dilemma posed—a dilemma which cannot be circumvented by relying on the *Aeolian* decision, as plaintiffs have attempted to do:

> "The language of the Copyright Act would seem to include Krug, the pirate, as a member of that class of subsequent manufacturers favored by the

lenient compulsory licensing provisions. But to follow the * * * court in actually regarding him as such results in the hopeless paradox of granting statutory privileges vis-a-vis the copyright holder at the same time that the dictates of common sense and common law demand penalty vis-a-vis the performer and the recorder."

13 Rut.L.Rev. 365, 367 (1958).

 Stated otherwise, it would appear to be inconsistent in the least to allow plaintiffs to allege infringement under the Act and then, on the other hand, selectively deny its applicability to defendants.

Plaintiffs would alternatively argue that, in any event, filing has come too late in the instant action. That is, the preliminary injunction should issue despite the fact that defendants have filed notices to use because such filing as is required by section 101(e) applies only to *prospective manufacturers* of new recordings. *Memorandum in Support of Plaintiffs' Application For Preliminary Injunction* at page 7 et seq. The cases plaintiffs cite to the point, however, do nothing to support their proposition. Shapiro, Bernstein & Co. v. Remington Records, Inc., 265 F.2d 263 (2d Cir. 1959); Leo Feist, Inc. v. American Music Roll Co., 251 F. 245 (3d Cir. 1918); Pickwick Music Corp. v. Record Productions, Inc., 292 F.Supp. 39 (S.D.N.Y.1968). In each of the above cases the defendants attempted to use the belated filings as a defense to their *prior* infringement. In each instance the courts had little trouble disposing of this transparent tactic. In the case at hand, however, plaintiffs for all practical purposes admit past infringement and do not seek to use their belated filing as a defense thereto. Rather, they seek to take advantage of the compulsory license provision for *future* manufacturing. Even if, as plaintiffs contend, both the district court in Miller v. Goody, 125 F. Supp. 348 (S.D.N.Y.1954), and the defendants at hand have misconstrued the holding of G. Ricordi & Co. v. Columbia Graphophone Co., 263 F. 354 (2d Cir. 1920), *see* Shapiro, Bernstein & Co. v. Goody, 248 F.2d 260, 264–265 (2d Cir. 1957), there is still no authority that would affirmatively deny defendants the right to now file and invoke the compulsory license provision.

Both Capitol and RCA in their respective first claims also seek an injunction against the defendant manufacturers and retailers and base their request on the fact that they are exclusive licensees under certain of the copyrights in question. As exclusive licensees they maintain they have the sole right to manufacture and market recordings of those musical works. No evidence was presented or argument heard on these claims at the show cause hearing of April 6, 1971. Aside from the serious reservations this Court maintains with regard to the basis of such a claim of exclusive rights, as expressed previously in the discussion of the *Aeolian* case, the Court notes that plaintiffs Capitol and RCA have failed to allege any grounds of jurisdiction for the issuance of an injunction. That is, they specifically ask only for damages in their second and third claims on theories of unfair competition and unfair trade practice, and specifically invoke diversity jurisdiction for those claims. However, they specifically do not allege jurisdiction under the Act for their first claims; neither do they invoke diversity jurisdiction for those claims.

 Accordingly, as to Capitol and RCA's first claims in which they seek injunctive relief against further piracy and retailing of pirated works, both a highly questionable basis for the claims and a failure to assert jurisdiction for the same preclude those recording companies from at this time partaking of any equitable relief afforded the copyright holder plaintiffs. The Court does not mean by this to hold that by proper application or prayer under the second and third claims a temporary restraining order or preliminary injunction may not issue.

Turning to the question of a preliminary injunction in favor of the copy-

right holder plaintiffs, this Court must determine, in view of what has already been said, whether such relief is appropriate.

As to the alleged infringement, plaintiffs, if they prevail on the merits, are entitled to statutory damages against both defendant manufacturers and retailers. Shapiro, Bernstein & Co. v. Goody, 248 F.2d 260 (2d Cir. 1957). There is no serious doubt that plaintiffs will prevail on the merits. The fact is, defendants do not really contest the allegation of infringement, as both their memoranda submitted thus far and oral argument at the show cause hearing clearly indicate. They are content to settle damages for past infringement as long as they can take advantage of the gaping loopholes in the Act and continue their manufacturing.

█ The record reveals that the writ of seizure yielded some 25,000 completed or recorded infringing tapes. Some 45,000 other completed tapes were left at defendants' manufacturing plant. Taking the 25,000 tapes seized with 12 infringed compositions per tape and tripling the 2 cent royalty due thereon, it can be calculated that damages to be assessed against the reproducing defendants may amount to at least $18,000. With proof of past sales to be presented at trial, the ultimate amount will probably be considerably larger.

Although this Court cannot, as it interprets the Act, prohibit future manufacture of the tape recordings, it can, in view of the suspect *modus operandi* evidenced by manufacturing defendants in the past, now require a close compliance with the compulsory license reporting provision. Accordingly,

It is ordered that plaintiffs return the tape recording equipment and machinery, as well as all blank tapes, cartridges, cassettes, labels or any unmarked or unprinted packaging materials seized and impounded pursuant to the writ of seizure dated March 26, 1971, to the persons from whom they were seized.

It is further ordered that all other property seized which embodies a mechanical and/or electronic impression of plaintiff publishers' copyrighted works and any packaging or promotional devices or materials identifying or referring to same be subject to impoundment during the pendency of this litigation.

It is further ordered that all defendants and their respective agents, servants and employees, and all persons in active concert or participation with said defendants, shall be, and hereby are, restrained and enjoined, pending the final determination of this action, or further order of this Court, from directly or indirectly infringing the copyrighted musical works of plaintiffs by engaging in any unauthorized manufacture, sale, distribution, use, or transferrence of articles or parts of instruments serving to reproduce mechanically any of the copyrighted musical works of plaintiffs.

It is further ordered that $40,000.00 bond deposited with the Clerk on March 26, 1971, shall remain on deposit for the payment of such costs and damages as may hereafter be found.