**DORCHESTER MUSIC CORPORATION, Plaintiff,**

v.

**NATIONAL BROADCASTING COMPANY et al., Defendants.**

Civ. Nos. 571-57-PH to 574-57-PH.

United States District Court
S. D. California, C. D.

Feb. 20, 1959.

582

Fink, Levinthal & Lavery (by Arthur Katz), Los Angeles, Cal., for plaintiff.

Jerry Rolston, Beverly Hills, Cal., for defendants.

Findings of Fact and Conclusions of Law in Support of Interlocutory Judgment of Copyright Iinfringement (Pursuant to Local Rule 7(a)).

HALL, District Judge.

After due deliberation, this Court makes the following Findings of Fact:

A. *Concerning the creation, exploitation and dissemination of Plaintiff's and Defendants' Compositions, the Court finds:*

1. Sometime in the Spring of 1953, Ben Blue, the entertainer and pantomimist, commissioned one, Ruth Freed, to compose an original musical composition to be used by Mr. Blue to accompany or "back-up" his pantomime act.

2. The commissioned composition was written shortly thereafter in Beverly Hills, California, with music by Fred Spielman; lyrics by Ruth Freed and Buddy Kaye were added some weeks later. The composition was entitled "Rendezvous".

3. The writers of "Rendezvous" executed a written contract dated June 1, 1953, and, by the terms thereof, conveyed to plaintiff, among other things, the right to acquire copyright in said composition. Mr. Blue was then, and is now, the President of plaintiff.

4. On September 22, 1953, the Copyright Office of the United States issued to plaintiff a Certificate of Registration of a Claim to Copyright in the original musical composition "Rendezvous" as a published work. Said certificate bears Registration No. Ep:74377.

5. Mr. Blue's pantomime (which consists of the character Schnooky in various incidents) is an integral part of his act. Commencing sometime in the late Spring of 1953 Mr. Blue has performed said pantomime to the musical accompaniment of "Rendezvous" in each of his public performances, with one known exception.

6. During the three years period from late Spring 1953 to June 1956, Mr. Blue performed his pantomime act to the musical accompaniment of "Rendezvous" in numerous auditoriums, private clubs, night clubs and hotels throughout the United States for as many as sixteen weeks per year in such widely flung

cities as Las Vegas, Nev., Cleveland, O., Atlanta, Ga., Reno, Nev., Galveston, Tex., Portland, Ore., Newport, Ky., Salt Lake City, Utah, Palm Springs, Cal., Oakland, Cal., Lake Tahoe, Cal., Hollywood, Cal., and Los Angeles, Cal. Mr. Blue performed said act to the accompaniment of "Rendezvous" during said three years period on at least a dozen "top rated" nationally televised "network shows", each of which was seen and heard by millions of persons. In each of these television performances, the song "Rendezvous" was performed "live" by studio musicians. During the three years period from late Spring 1953 to June 1956 Mr. Blue performed his pantomime act to the accompaniment of "Rendezvous" on television and in leading hotels, night clubs, auditoriums and private clubs more than four hundred times.

7. Prior to the conveyance of rights to plaintiff, the writers of "Rendezvous" had submitted manuscript copies to several music publishers in New York City, among them, the leading publishing firm of Hill & Range.

8. Sometime in the Summer of 1953, plaintiff caused some ten to twelve "demonstration records" to be made of "Rendezvous". These were sent to the New York City offices of such record companies as RCA-Victor, Columbia, Decca, Capitol, Mercury and MGM in order to induce said companies to record "Rendezvous". None of these demonstration records was returned to plaintiff.

9. Tony Martin recorded "Rendezvous" for RCA-Victor sometime in late 1953, but this recording was never released publicly.

10. On September 10, 1953, Billy Eckstine recorded "Rendezvous" for MGM Records, and said recording was released in December 1953 in three (3) turn table speeds namely, 78 rpm, 45 rpm, and in a 33⅓ rpm album titled "Rendezvous". The evidence showed sales of 30,112 records from the date of the recording's first release in December 1953 through June 1956.

11. Plaintiff caused pianoforte copies and professional copies of "Rendezvous" to be published on or about September 22, 1953. The pianoforte copies were distributed for sale to the public by plaintiff's agent, Keys Music, Inc., 146 West 54th Street, New York. The professional copies were distributed by said agent and by plaintiff free of charge to professional entertainers to induce them to perform and record the composition "Rendezvous". Some 5000 copies of the pianoforte edition and an equal number of the professional edition were placed in distribution. Mr. Fields testified that approximately 500 copies of the pianoforte edition were sold.

12. Plaintiff is a publisher member of the American Society of Composers, Authors and Publishers (ASCAP). ASCAP endeavors to "log" all performances on radio and television of compositions owned by its members. The ASCAP data furnished by plaintiff was incomplete, and evidence was introduced tending to indicate that logging errors had been committed by ASCAP with respect to crediting of performances of "Rendezvous" to plaintiff. However, restricting itself to the data furnished, it is found that during the three years period from March 1953 through June 1956 ASCAP logged thirty-two (32) performances of "Rendezvous" on television and a like amount of performances on radio. ASCAP does not log night club or other non-telecast or broadcast performances.

13. The entertainment industry trade journal "Variety" in its issue of September 29, 1954, reported that plaintiff's composition "Rendezvous" was among the "Top 30 Tunes performed on television" in the United States during Variety's survey week of September 17–23, 1954. The Court takes judicial notice of the fact that "Variety" is a highly regarded medium of information in the entertainment industry.

14. Plaintiff introduced royalty checks from ASCAP indicating that during the three years period from Spring

584

1953 through June 1956, the composition "Rendezvous" was performed in several foreign countries.

15. Defendant Trinity Music Inc., (hereinafter referred to as defendant Trinity) with its main offices at 101 West 55th Street, New York 19, New York, is the publisher and copyright proprietor of the composition "I Dreamed". Defendant Trinity is doing business in the State of California and within the judicial district of this Court.

16. On September 13, 1956, the Copyright Office of the United States issued to defendant Trinity a Certificate of Registration of a Claim to Copyright in the musical composition "I Dreamed" as an unpublished work, Registration No. Eu:450018.

17. On November 2, 1956, the Copyright Office of the United States issued to defendant Trinity a Certificate of Registration of a Claim to Copyright in the musical composition "I Dreamed" as a published work Registration No. Ep:103258.

18. The Copyright Certificates list Charles Grean as author of the music, and Marvin Moore as author of the words.

19. Charles Grean testified that he is a managing officer and one of the owners of the defendant Trinity, and a professional composer and songwriter. Mr. Grean testified that he wrote both the lyrics and the music of "I Dreamed" during the month of June 1956, and that the music "came out of his head", and that the lyrics were "polished" by one, Marvin Moore.

20. The composition "I Dreamed" was recorded for the first time in the Fall of 1956 on the Bally label by Betty Johnson, a professional entertainer, now, but not then, the wife of Mr. Grean and then her manager. "I Dreamed" was also recorded on the Atlantic and Plymouth record labels. All recordings were made pursuant to licenses issued by defendant Trinity.

21. Defendant Trinity published pianoforte and professional copies of "I Dreamed" and placed these copies in public distribution.

22. Defendant Trinity is a publisher member of defendant Broadcast Music Inc., (hereinafter referred to as defendant BMI). Defendant BMI licensed defendants National Broadcasting Co., Columbia Broadcasting System, Inc., and American Broadcasting/Paramount Theatres, Inc., (hereinafter referred to as the "Broadcaster Defendants"), among others, to publicly perform for profit "I Dreamed" over the facilities of radio and television stations owned by or affiliated with said Broadcaster Defendants and said Broadcaster Defendants did broadcast "I Dreamed" on numerous occasions commencing sometime in 1956, and continuing after receipt by the defendants, and each of them, of actual notice of commencement of this litigation by service of process in this cause which consists of four (4) consolidated cases.

23. Mr. Grean, in sworn answers to interrogatories posed by the plaintiff, stated that he was an A & R man (artist and repertoire man) during the period 1946 through 1950. At the trial, Mr. Grean testified that he was also an A & R man from the period 1953 through 1956 and is presently an A & R man. Mr. Grean further testified that an A & R man selected tunes to be recorded and chose the artist to record the composition selected. Mr. Grean also testified he was fully conversant with all phases of the music industry and that he kept abreast of the day to day developments in the industry, and that he had a fine musical memory.

24. Mr. Grean resides within the Greater New York area. The office of defendant Trinity (of which Mr. Grean is an officer) is at 101 West 55th Street in New York City. The Court takes judicial notice of the fact that said office is in the heart of the music business area known in the vernacular as "Tin Pan Alley".

25. Mr. Grean testified that he listened very sparingly to television and radio and rarely visited hotels and night

clubs but that it was possible that he had seen Mr. Blue perform his pantomime act to the accompaniment of "Rendezvous" within the period from March 1953 to June 1956, and that it was possible that he had heard the melody of the composition "Rendezvous" performed on other occasions during said period. Mr. Grean further testified that it was possible that when he sat down to write the melody of "I Dreamed" that he wrote down instead the melody of "Rendezvous" which he may have heard sometime before, and which he was then unconsciously recalling.

26. On January 22, 1956, and again on February 19, 1956, and again on May 6, 1956, and again on May 27, 1956, Mr. Blue performed his pantomime act to the accompaniment of "Rendezvous" on the NBC Comedy Hour Television Show which originated "live" from New York City. Mr. Blue's performance on the May 27th Show occurred immediately prior or shortly prior to the time that Mr. Grean acknowledged that he composed "I Dreamed" in the month of June 1956.

27. Mr. Grean acknowledged that the melodies of the two compositions sounded similar to him. The expert witness employed by the defendant to analyze and dissect the compositions in question also acknowledged that the melodies of the two compositions sounded similar.

B. *Concerning the structure of plaintiff's composition, this Court finds*:

1. Plaintiff's composition is a popular composition in the key of B flat written to be played in 4/4 or common time. Common time consists of four (4) beats to each bar or measure of music. The tempo or rhythm of "Rendezvous" is moderately slow.

2. Plaintiff's composition consists of a brief introduction, a 16 bar chorus, a short bridge or relief, and a very brief ending. There is no verse. The key melodic theme of plaintiff's composition is contained in a four bar phrase found in the opening portion or "front strain" of the chorus.

3. The second four bar phrase of the chorus repeats the front strain melody one tone higher.

4. The third four bar phrase of the chorus repeats the front strain with exception of the last note.

5. The next four bar phrase is a bridge or relief between the key melodic theme as used in the third and fifth bars of the composition.

6. The fifth four bar phrase repeats the front strain of the chorus with a new ending.

7. Exclusive of the bridge, the 16 bar chorus of "Rendezvous" consists of a repetition of the 4 bar key melodic theme with a tonal variation in one four bar phrase.

8. The composer of "Rendezvous" has employed (aside from his "lead-in" notes) the harmonic device of dropping "a third" in his melodic progression: B flat, G, E flat, C, A and F.

C. *Concerning the structure of defendants' composition, this Court finds*:

1. "I Dreamed" is a popular composition in the key of C, written to be played as a fast composition in "cut time". Cut time consists of 2 beats to the bar. Thus one (1) bar in common time equals 2 bars in cut time.

2. The defendants' composition consists of a brief introduction, a forty-eight (48) bar chorus, a bridge or relief and an ending. There is no verse.

3. The key melodic theme of defendants' composition is contained in an eight bar phrase found in the opening portion or front strain of the chorus.

4. The second eight bar phrase of the chorus repeats the front strain melody one tone higher.

5. The third eight bar phrase of the chorus repeats the front strain.

6. The fourth eight bar phrase repeats the second phrase (which second phrase is a repeat of the front strain one tone higher).

7. The next 16 bars phrase constitutes a bridge or relief between repetitions of the key melodic theme.

8. The fifth eight bar phrase repeats the front strain of the chorus.

9. The sixth eight bar phrase repeats the second phrase (which second phrase is a repeat of the front strain one tone higher).

10. The 48 bar chorus of "I Dreamed" consists of a repetition of the 8 bar key melodic theme with one tonal variation.

11. The composition "I Dreamed" uses the harmonic device of dropping "a third" in the melodic progression: C, A, F, D, B and G.

D. *Concerning the Analysis and comparison of the subject compositions, the Court finds:*

*Note:* No charge of infringement is made with respect to the lyrics of defendant Trinity's composition "I Dreamed".

1. Both compositions are identical in that the key melodic theme is established in the front strain or first phrase of each composition's chorus.

2. Both compositions are identical in that the front strain is repeated one tone higher in the second phrase of each.

3. Both compositions are identical in that the key melodic theme contained in the front strain of each is repeated with the tonal variation noted to make up the *entire chorus* of each song.

7. Both compositions are identical in that each uses the device of dropping "a third" in the melodic progression.

8. The indicated harmonics in the ·published pianoforte (and professional) copies of both compositions are substantially the same.

9. A visual examination and reading of the published pianoforte (and professional) copies of each composition reveals a similarity bordering on identity.

· 10. When played as written the key melodic themes of the respective compositions sound substantially similar to the ordinary reasonable person, notwithstanding the fact that the compositions are played in different keys and tempos.

· 11. When the choruses of the compositions are transposed into the same key and played in the same time their striking similarities are immediately heard by the ordinary reasonable person.

E. *Concerning prior art, this Court finds:*

· 1. Neither plaintiff's expert, nor defendants' expert found in prior art any musical composition which contained either the precise combination of notes making up the melodies of either plaintiff's and defendants' compositions, or any combination of notes substantially similar to either of said melodies.

2. Groupings of notes were found by the defendants' expert which were similar to some of the snatches or portions of "I Dreamed". However, these snatches show no existence in prior art of the specific melodies of "Rendezvous" or "I Dreamed". Further, Mr. Grean testified that h·did not go to public or other sources in writing his melody. (See Finding No. A–19, above).

*Conclusion: Basing its factual conclusions on the cumulative weight of the above Findings of Fact, this Court finds:*

■ 1) *On the issue of orginality of Plaintiff's composition;* Plaintiff's composition is an original work.

■ 2) *On the issue of copying:* Analysis or "dissection" of the music involved, in which the Court was aided by the experts of the parties, show similarities sufficient to establish that the melody of defendants' composition "I Dreamed" was copied from the melody of Plaintiff's composition "Rendezvous".

3) *On the issue of unlawful appropriation (substantial copying):* Virtually the entire melody of "Rendezvous" was copied and since said melody constituted almost all of plaintiff's composition, the copying of the melody was a copying of a substantial portion of plaintiff's composition.

■ 4) *On the issue of access:* Although there is no evidence of direct ac-

cess, the two melodies are so substantially similar as to be identical, when played in the same time, to the ear of the ordinary reasonable person, although they may not appear to be identical to the ear of an expert who may detect some slight variations.

Thus, taking into consideration all of the evidence in the case, the Court is warranted in drawing the inference that there must have been access, and this Court so finds.

Upon the foregoing Findings of Fact, the Court makes the following:

### Conclusions of Law

1) This action, consisting of four (4) consolidated cases, arises under the Copyright Laws of the United States, Act of July 30, 1947, 61 Stat. 652, 17 U.S.C. § 1 et seq. This Court has jurisdiction over the defendants, and each of them, and venue is properly laid. 28 U.S.C. §§ 1338(a), 1400(a).

2) Plaintiff Dorchester Music Corporation has complied with the Copyright Laws of the United States, and is the owner of a valid and subsisting copyright in the original musical composition "Rendezvous" Reg. No. Ep:74377, Registration date: September 22, 1953, Registration Class: E:Published.

■ 3) Each of the defendants has infringed upon plaintiff's said copyright, as follows:

(a) *Infringement by defendant Trinity Music, Inc. (Trinity)*.

(i) Defendant Trinity has infringed upon plaintiff's copyright by printing, reprinting, publishing and vending copies of its musical composition "I Dreamed" the melody of which was copied without authorization by Charles Grean from plaintiff's copyrighted composition "Rendezvous". The melody of "Rendezvous" is that portion of said work upon which its popular appeal and commercial success depends. Such copying is not a fair use but a substantial copying and an infringement of plaintiff's copyright. 17 U.S.C. § 1(a).

(ii) Defendant Trinity has further infringed upon plaintiff's copyright by licensing the public performance for profit of its infringing composition "I Dreamed" on radio and television and elsewhere through its licensing agent, defendant Broadcast Music Inc. 17 U.S.C. § 1(e).

(iii) Defendant Trinity has further infringed upon plaintiff's copyright by licensing the manufacture of phonograph records using said infringing composition. 17 U.S.C. § 1(e).

■ (b) *Infringement by defendant Broadcast Music, Inc. (BMI)*.

Defendant BMI has infringed upon plaintiff's copyright by licensing radio and television stations and others throughout the United States and elsewhere to publicly perform for profit said infringing composition. 17 U.S.C. § 1(e).

■ (c) *Infringement by defendant National Broadcasting Company (NBC)*.

Defendant NBC and its respective owned and affiliated radio and television stations have infringed upon plaintiff's copyright by publicly performing for profit said infringing composition. 17 U.S.C. § 1(e).

(d) *Infringement by defendant American Broadcasting/Paramount Theatres, Inc. (ABC)*.

Defendant ABC and its respective owned and affiliated radio and television stations have infringed upon plaintiff's copyright by publicly performing for profit said infringing composition. 17 U.S.C. § 1(e).

(e) *Infringement by defendant Columbia Broadcasting System, Inc. (CBS)*.

Defendant CBS and its respective owned and affiliated radio and tele-

vision stations have infringed upon plaintiff's copyright by publicly performing for profit said infringing composition. 17 U.S.C. § 1(e). Each of said infringements has continued after receipt by each defendant of actual notice by service of process herein.

4) Plaintiff is entitled to a decree against the defendants, and each of them, their officers, agents, servants, employees, attorneys and licensees and against all persons, firms, corporations and associations in concert with them, whether acting directly or indirectly, permanently enjoining and restraining them, and each of them, from using, reproducing, recording, performing, printing, reprinting, publishing, copying, vending and otherwise infringing plaintiff's copyright in its musical composition "Rendezvous" and from selling, disposing of, or otherwise turning to account any and all existing infringing copies, articles, records and devices. 17 U.S.C. §§ 101(a) and 112.

5) Plaintiff is entitled to recover from the defendants, and each of them, the damages and profits to which it is entitled by law (17 U.S.C. § 101(b)), together with full costs of these suits (17 U.S. C. § 116), and as part of said costs, the plaintiff is entitled to an award of reasonable attorneys' fees to be assessed by this Court for the services of said attorneys in these consolidated cases and in all proceedings relating thereto. 17 U.S. C. § 116.

6) Plaintiff is entitled to a decree against the defendants requiring the defendants, and each of them, to deliver up, on oath, for destruction all infringing copies, articles, records and devices now in their possession or under their control, or under the possession or control of their agents, or employees, as well as all plates, molds, matrices or other means of making such infringing copies, articles, records and devices of plaintiff's copyrighted song "Rendezvous". 17 U.S. C. § 101(d).

7) The liability of the defendants, and each of them, as infringers of plaintiff's said copyright having been adjudicated in plaintiff's favor, there remains but the issue of computing the issue of damages and profits due plaintiff, and, for the sole purpose of computing such damages and profits, the plaintiff is entitled to a decree referring this cause to a Special Master to make an accounting of the measure of damages and profits due the plaintiff from the defendants, and each of them. Rule 53 F.R.Civ.P., 28 U.S.C.A.

8) The allowance of the Special Master and the cost of said reference shall be charged against and borne by the defendants. Rule 53(a), F.R.Civ.P.

9) Any and all purported copyrights heretofore obtained, or applied for, with respect to the infringing musical composition "I Dreamed" are hereby adjudged to be null and void *ab initio* and of no effect whatever. 17 U.S.C. § 101.

10) Although the foregoing acts of copyright infringement also constitute acts of unfair competition, the plaintiff is not entitled to recover damages for such acts of unfair competition.

11) An Interlocutory Judgment in accord herewith shall be prepared by plaintiff's counsel pursuant to Local Rule 7(a) of this Court, West's Ann.Cal.Code, and this Court shall retain jurisdiction of this cause for the purpose of making any further orders necessary to carry into effect said Interlocutory Judgment and to determine the damages and profits, attorneys' fees and costs to be awarded plaintiff, and, when such determination is made, to enter Final Judgment in plaintiff's favor.

### On Motion to Reopen

The Court granted defendants' Motion to reopen the case on the narrow issue of whether the defendants had such a license from ASCAP as to permit the defendants to perform the alleged infringement of plaintiff's composition "Rendezvous."

The first ground is that plaintiff is not a proper party in interest, but that ASCAP is. This point is effectively and conclusively disposed of against defendants' contention in Feist, Inc. v. Young, 7 Cir., 1943, 138 F.2d 972, and Widenski v. Shapiro, Bernstein & Co., 1 Cir., 1945, 147 F.2d 909.

The second contention is that by plaintiff's agreement with ASCAP, and ASCAP's agreement with defendants, defendants were licensed to play or perform plaintiff's composition "Rendezvous."

There is nothing to defendants' point in that respect as ASCAP was the agent of plaintiff, and ASCAP could not license or authorize defendants or any of them to commit a tort. Loew's Inc. v. Columbia Broadcasting System, D.C.S.D. Cal.1955, 131 F.Supp. 165, affirmed Benny v. Loew's Inc., 9 Cir., 1956, 239 F. 2d 532, affirmed 1958, 356 U.S. 43, 78 S.Ct. 667, 2 L.Ed.2d 583.

Plaintiff is entitled to judgment as originally indicated from the Bench on November 18, 1958.